UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| William John Barber,<br><br>   Plaintiff,<br><br>v.<br><br>Jeff Schmidt, Julie Miller,<br>S. Solmonson, Dan Cansino,<br>B.R. Jett, and Ann Paris,<br><br>   Defendants. | Civil No. 10-3317 (JRT/SER)<br><br><br>**REPORT & RECOMMENDATION** |

  William John Barber, *pro se*, #02365-029, 954 South 24th Street, Fort Dodge, IA 50501.

  Lonnie F. Bryan, Esq., United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Defendants.

STEVEN E. RAU, United States Magistrate Judge.

  This matter is before the undersigned United States Magistrate Judge on Defendants' Motion to Dismiss or, Alternatively for Summary Judgment [Doc. No. 31] and Plaintiff William John Barber's Motion for Summary Judgment [Doc. No. 36]. The matter has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons discussed below, the Court recommends that the Motion to Dismiss or, Alternatively for Summary Judgment [Doc. No. 31] be granted, and Plaintiff William John Barber's Motion for Summary Judgment [Doc. No. 36] be denied.

  **I. BACKGROUND**

  Plaintiff William John Barber ("Barber") is a former inmate of the Federal Medical Center in Rochester, Minnesota ("FMC Rochester"). Defendants Jeff Schmidt, Julie Miller, S.

1

Solmonson, Dan Cansino, B.R. Jett, and Ann Paris (collectively "Defendants") are employees or former employees of FMC Rochester.

In 2001, Barber was charged in Iowa state court with Assault with Intent to Commit Sexual Abuse. (Mem. of Law in Supp. of Filing of Civil Compl. at p. 2, hereinafter "Pl.'s Br. at __"). The charges stemmed from an incident in March 2000 in which Barber went to a home where two under-aged girls were babysitting. (Defs.' Ex. 1 [Doc. No. 41]). Barber admitted to grabbing the ankles of one girl, pulling her on the floor toward him, and lying on top of her "in a wrestling way." (*Id.*). He also admitted to sitting on her lap and tickling the inside of her knees. (*Id.*). Barber grabbed one girl's underwear and placed them on his head. (*Id.*). He admitted to giving at least one of the girls some of his alcoholic beverage. (*Id.*).

On June 4, 2001, the charge was amended to Assault and Providing Alcohol to a Minor. Barber pled guilty to those charges and was sentenced to seven days in jail. (Pl.'s Br. at p. 2). He was also ordered to pay a fine and court costs, and to participate in a sex offender evaluation. (*Id.*). Barber completed an initial sex offender evaluation with Catholic Social Services ("CSS"). A representative of CSS told the court that Barber needed treatment. (*Id.*). Barber's attorney argued that CSS had a financial incentive to recommend placing individuals in its program and the Iowa court allowed Barber to obtain a second opinion. (*Id.*). Two Rivers Psychological Services reviewed some of the tests and records from CSS but Dr. John Garfield was unable to complete the evaluation because CSS did not provide the complete test results. (*Id.;* Pl.'s Ex. B attached to the Mem. of Law in Supp. of Filing of Civil Compl. at p. 25, hereinafter "Pl.'s Ex. __"). Based on the limited test results he reviewed and a single interview with Mr. Barber, Dr. Garfield stated "[i]f there is some legitimate psychological reason why William Barber should be compelled to go through a sex offender's treatment program, this veteran clinical psychologist

had not been able to determine what that reason is." (Pl.'s Ex. B). Barber asserts that after this second partial evaluation the Court concluded "[Barber] would not be on any kind of State registry as he is **not a sex offender**." (Pl.'s Br. at p. 3) (emphasis in original).

Subsequently, in 2001, Barber was indicted on federal charges. He pled guilty to Use of Fire to Commit a Felony and in August 2002 was sentenced to 120 months of imprisonment. In his Pre-sentence Report (PSR) for the federal charges, Barber admitted to the actions with the juvenile girls described above. (Defs.' Ex. 1).

Barber was incarcerated at FMC Rochester from October 9, 2002 until August 11, 2010, when he was transferred to a Residential Reentry Center (RRC) in Iowa. When Barber arrived at FMC Rochester, the Federal Bureau of Prisons ("BOP") classified Barber with a Public Safety Factor ("PSF") of sex offender on November 7, 2002. (Pl.'s Ex. D). Barber asserts that prison officials threatened him with restrictions and segregation if he did not sign the sex offender registration and treatment notification. (Pl.'s Br. at p. 3).

In 2007, Barber was assigned a new case manager, Julie Miller. (Pl.'s Br. at p. 3). Barber raised the sex offender PSF with Miller. (*Id.*). Miller informed Barber that, pursuant to BOP Program Statement 5100.08, the BOP could assign a sex offender PSF if the underlying charge involved a sex offense, even if the ultimate conviction was not for a sex offense. (*Id.*; *see also* BOP Program Statement 5100.08). Miller, therefore, refused to change Barber's PSF classification.

In February 2010, Barber's new case manager, S. Solmonson, signed and submitted paperwork for Barber's RRC. (Pl.'s Br. at 4). Because of Barber's PSF classification, the RRC required Barber to sign a Resident Behavior Contract in March 2010 that prohibited him from possessing pornographic materials and having contact with juveniles. (Pl.'s Ex. E). The

Resident Behavior Contract also provided that Baber **may** have to register as a sex offender with local or county law enforcement "if it is a requirement of the established laws and regulations of the jurisdiction of placement." (*Id.*) (emphasis supplied).

On August 12, 2010, Barber completed Iowa sex offender registration forms at the Sherriff's office in Fort Dodge, Iowa. (Attachment A to the Decl. of Dennis Bitz) [Doc. No. 42]. Iowa Sex Offender Registry ("ISOR") staff reviewed the forms and concluded Barber's state Assault conviction was not a qualifying offense for sex offender registration under Iowa statutes. ISOR staff input Baber's information "for archival purposes," but his information was never published on Iowa's sex offender website nor made available to the public. (*Id.*). On August 30, 2010, ISOR staff sent Barber a letter informing him he was not required to register as a sex offender in Iowa. (*Id.*).

Barber brings the instant Complaint pursuant to 42 U.S.C. § 1983 alleging Defendants violated his constitutional rights by assigning him a PSF classification as a sex offender.[1] Specifically, Barber asserts that his due process rights were violated when the BOP assigned his PSF classification because the Iowa court did not convict him of a sex crime.

Defendants moved to dismiss and for summary judgment arguing: (1) Barber failed to exhaust his administrative remedies; (2) Barber cannot sue Defendants in their individual capacities because of qualified immunity; (3) the claims are barred by sovereign immunity, to the extent Barber asserts claims against the Defendants in their official capacities; and (4) this Court does not have subject matter jurisdiction to award mandamus relief. The Court agrees that

---

[1] Barber originally initiated this action as a Petition for Habeas Corpus pursuant to 28 U.S.C. § 2241 [Doc. No. 1]. Previously, then-Magistrate Judge Susan Richard Nelson recommended that the Petition be dismissed because Barber was not challenging the fact or duration of his confinement [Doc. No. 8]. She further advised that Barber might be able to seek redress for the issues raised in his Petition by filing a new action as a civil complaint challenging the conditions of his confinement. Barber thereafter filed the instant Complaint [Doc. No. 17].

4

Barber failed to exhaust his administrative remedies and therefore recommends that Defendants' Motion to Dismiss, or Alternatively for Summary Judgment be granted.[2]

## II. DISCUSSION

### A. Standard of Review

Because both Parties submitted documents outside the pleadings, this Court will construe both motions as motions for summary judgment. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A non-moving party cannot rely on the "mere existence of **some** alleged factual dispute between the parties [to] defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no **genuine** issue of **material** fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then Rule 56 requires the entry of summary judgment in favor of the moving party. *Id.* at 322-23. All evidence will be viewed in

---

[2] Barber asserts in his cross-motion for summary judgment that Defendants' Motion to Dismiss was untimely. Barber contends that the Defendants were served with the Summons and Complaint on October 29, 2010. In reality, however, Defendants were served on November 3, 2010 [Doc. No. 43]. Pursuant to Fed. R. Civ. P. 12(a)(2) and (3), Defendants had 60 days to respond to the Complaint, up to January 2, 2011. Because January 2, 2011 was a Sunday, pursuant to Fed. R. Civ. P. 6(a)(3), Defendants' response to the Complaint was not due until January 3, 2011, the date on which Defendants filed their motion to dismiss. Defendants' motion was therefore timely.

the light most favorable to the nonmoving party. *Qamhiyah v. Iowa State Univ. of Sci. & Tech.*, 566 F.3d 733, 741 (8th Cir. 2009).

### B.  Exhaustion of Administrative Remedies

Defendants contend that they should be granted summary judgment because Barber failed to completely exhaust his administrative remedies.  In response, Barber asserts that he did exhaust his administrative remedies and that, in any event, complete exhaustion would have been futile.  The Court agrees that Barber failed to properly exhaust his administrative remedies with respect to his PSF sex offender classification.

Pursuant to the Prison Litigation Reform Act (PLRA), a prisoner must exhaust his administrative remedies prior to asserting a civil rights claim challenging the conditions of his or her confinement.  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes."  *Porter v. Nussle,* 534 U.S. 516, 532 (2002).  This is true regardless of the nature of the claim or the relief the prisoner is seeking.  *Booth v. Churner,* 532 U.S. 731, 741 (2001).

The purpose of the PLRA exhaustion requirement is to eliminate unwarranted federal-court interference with the administration of prisons by giving prison personnel the opportunity to redress complaints before court intervention.  *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006).  "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *King v. Iowa Dept. of Corr.*, 598 F.3d 1051, 1052 (8th Cir. 2010) (quoting *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002)).

Where a prisoner failed to exhaust administrative remedies, by failing to raise a grievance about an issue in accordance with the regulations of the prison, the inmate may not proceed with

litigation. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *see also Jones v. Bock*, 549 U.S. 199, 212 (2007); *Porter*, 534 U.S. at 524; *Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005). Failure to exhaust is an affirmative defense under the PLRA and inmates are not required to plead exhaustion in their complaints. *Bock*, 549 U.S. at 216. To properly exhaust his or her administrative remedies, a prisoner must simply comply with the prison's grievance procedures. *Bock*, 549 U.S. at 218 (citing *Woodford*, 548 U.S. at 88). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Bock*, 549 U.S. at 218.

The PLRA makes exhaustion of prison administrative remedies mandatory, regardless of the efficacy or adequacy of the grievance process. *Washington v. Uner*, 05-1410, 2006 WL 3209821, *3 (D. Minn. Nov. 7, 2006). Thus, a prisoner must exhaust his administrative remedies, even if he or she believes the process is futile or requests relief that the administrative body does not have power to grant. *Booth v. Churner*, 532 U.S. 731, 741 n. 6 (2001); *Reynolds v. Doe*, No. 10-7000, 2011 WL 2004470, *1 (4th Cir. 2011); *Napier v. Laurel County, Ky.*, 636 F.3d 218, 222 (6th Cir. 2011). The Supreme Court has stated, "we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth*, 532 U.S. at 741 n. 6. Only two circumstances excuse a prisoner from the exhaustion requirement in the Eighth Circuit. *Gibson*, 431 F.3d at 341. Inmates may be excused from exhaustion when government officials prevent prisoners from utilizing the exhaustion procedures, or, when prison officials fail to comply with the grievance procedures. *Id.*

In this case, Barber did not properly exhaust his administrative remedies because he did not complete all levels of the BOP's grievance procedures. The BOP has a four-part

7

administrative remedy program designed to address a federal inmate's concerns regarding any aspect of his or her confinement. 28 C.F.R. § 542.10, *et seq.* This procedure is found in Program Statement 1330.16, Administrative Remedy Program, and is also codified at 28 C.F.R. § 542. Under the administrative remedy program, an inmate must first attempt informal resolution of the complaint to prison staff. 28 C.F.R. § 542.13. If informal resolution is unsuccessful, the inmate must then raise his or her complaint with a formal written Administrative Remedy Request to the warden of the institution where he or she is confined.[3] 28 C.F.R. § 542.14. This Request must be submitted within 20 calendar days following the date on which the basis for the Request occurred. *Id.* Then the inmate may appeal the warden's response to the Regional Director and if dissatisfied with the Regional Director's response, then appeal to the General Counsel. 28 C.F.R. § 542.15. An inmate exhausts his or her administrative remedies once the General Counsel responds. *Id.* In limited circumstances, the inmate may begin the grievance procedure directly with the Regional Director for particularly sensitive issues, "[i]f the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution." *Id*. at § 542.14(d). The Regional Director can decline the Request if he or she disagrees that the issue is sensitive. *Id.* The Regional Director then returns the Request to the inmate. *Id.*

While over the course of his confinement Barber raised issues with the BOP related to his PSF sex offender classification, at no time did he complete a full round of the BOP's administrative grievance procedures.

---

[3] Traditionally prison officials and courts refer to the BOP administrative remedy program as involving three parts, rather than four. *See e.g. Tendall v. Fisher*, 2011 WL 2533853, *2 (D. Minn. 2011); *Baymon v. Jett*, No. 09-2032, 2010 WL 1687805, *4 (D. Minn. Feb. 11, 2010); and *Somerset v. Fondren*, No. 09-788, 2009 WL 3461410, *2 (D. Minn. Oct. 20, 2009). In those cases the informal resolution and the Administrative Remedy Request to the warden are considered one step. *Id.* Regardless, even if this Court considered the program as involving only three steps, as set forth below, Barber did not completely exhaust his administrative remedies.

8

In 2002, when BOP staff first assigned Barber the sex offender PSF, he arguably attempted informal resolution of the issue by objecting to the PSF to his case manager. He did not, however, at that time file an Administrative Remedy Request to the warden or appeal to the Regional Director or General Counsel. (Defs.' Mem. in Supp. of Mot. to Dismiss of for Summ. J. at 13, hereinafter "Defs.' Br."; *see also* Decl. of Dennis Bitz [Doc. No. 33]). Barber, therefore did not properly exhaust his remedies related to his PSF classification in 2002. Barber asserts he next raised the issue in 2007 with his new case manager, Miller. (*Id.* at 13-14). Even accepting the exchange with Miller as an informal request under the Administrative Remedy Program, Barber again failed to file an Administrative Remedy Request with the warden and did not appeal to any higher authority. Barber did not completely exhaust his administrative remedies in 2007.

The next time Barber objected to his PSF classification was in 2010 when he was required to sign a Resident Behavior Contract in relation to his RRC placement and to report to local authorities. Barber does not allege and there is no evidence in the record that he raised the issue informally with anyone at FMC Rochester or the facility manager of the RRC. Nor did Barber file an Administrative Remedy Request with the warden in 2010. (Decl. of Bitz at ¶ 6). Instead, Barber filed an appeal directly with the Regional Director, bypassing the first and second steps of the administrative remedy program. (*Id.*). The Regional Director rejected the appeal and directed Barber to file a grievance with the warden. Instead of complying with this directive, Barber attempted to appeal again to the General Counsel, who also rejected the appeal because Barber had not filed an Administrative Remedy Request with the warden. (*Id.*). The appeal was ultimately returned to Barber on July 16, 2010. (*Id.*). There is nothing in the record to suggest

9

Barber pursued any administrative remedies after his RRC placement in August 2010.[4] In connection with his release to the RRC in 2010, Barber did not exhaust his administrative remedies and, therefore, he cannot maintain the instant suit under the PLRA.

While Barber attempted to raise the issues of his PSF classification with his Iowa trial court judge and Senator Tom Harkin, (Pl.'s Ex. G and H), such actions do not constitute part of the prison's administrative grievance procedure. Barber must have complied with the BOP's administrative remedy program and his extraneous attempts to resolve his complaints outside of the BOP do not constitute exhaustion for purposes of the PLRA. Barber may be contending that it would have been futile for him to pursue a grievance with the warden because the warden responded to Senator Tom Harkin asserting that Barber's PSF classification was correct and that the requirement that Barber sign a Resident Behavior Contract was also appropriate under BOP policies. This futility argument fails. Even if Barber believed the warden's administrative response would be the same as the response he gave to Senator Harkin, Barber was required to go through the BOP's administrative grievance procedures. Barber's claim does not fit within the *Gibson* exceptions. There is no evidence a prison official prevented barber for exhausting his administrative remedies or that officials themselves failed to comply with BOP grievance procedures. Because Barber did not properly or completely exhaust his administrative remedies he cannot maintain the instant suit and Defendants' motion should be granted.

---

[4] Barber initiated this suit on August 4, 2010, before his release to the RRC and before his release from custody. While the Eighth Circuit has concluded that the provisions of the PLRA are inapplicable to former inmates who file civil rights complaints after their release from custody, *Doe By and Through Doe v. Washington Cty.*, 150 F.3d 920, 924 (8th Cir. 1998), the court has not decided whether an inmate who is released after their filing a civil rights complaint must exhaust their administrative remedies. At least one other magistrate who considered the issue concluded that an individual who files a civil rights complaint while still in custody, must exhaust his or her administrative remedies even if they are later released. *Ross v. Felstead*, 04-2695, 2006 WL 2707344, *7 n. 6 (D. Minn. Sept. 19, 2006) (adopting Report & Recommendation) (citing *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004); *Dixon v. Page*, 291 F.3d 485, 489 (7th Cir. 2002)).

### III. RECOMMENDATION

Based upon the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion to Dismiss or, Alternatively for Summary Judgment [Doc. No. 31] be **GRANTED**; and

2. Plaintiff William John Barber's Motion for Summary Judgment [Doc. No. 36] be **DENIED**.

Dated: July 12, 2011

                                                s/ Steven E. Rau
                                                STEVEN E. RAU
                                                United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **July 26, 2011**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.